**UNITED STATES of America,
Appellee,

v.

Luther James COVINGTON, Appellant.
No. 12557.**

United States Court of Appeals
Fourth Circuit.

Argued April 10, 1969.

Decided June 12, 1969.

tion, by General Motors Acceptance Corporation he got another—maroon in color. How he acquired the second one—whether honestly or with knowledge it was stolen—was one of the issues below. Rejecting his contention of ownership,[1] the jury convicted Covington of transporting in interstate commerce a stolen motor vehicle, knowing it to have been stolen, in violation of 18 U.S.C. § 2312. From his conviction and the active sentence imposed by the court, he brings this appeal.

■ The principal issue presented for review is whether or not there was a fatal variance. The indictment alleged transportation of the maroon Bonneville "on or about" December 27, 1966, whereas all of the government's evidence tended to show that the car had been brought into North Carolina during the first week of July 1966, and there was no evidence suggesting that it had since that time left the state. We agree that such a time discrepancy between the indictment and the evidence is substantial, but we think on the facts of this case that the variance was not so material and prejudicial as to require reversal of the conviction.

Jerry S. Weston, Greensboro, N. C. (court-appointed counsel), for appellant.

William H. Murdock, U. S. Atty. (H. Marshall Simpson, Asst. U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Luther James Covington owned a yellow 1965 Pontiac Bonneville in 1966 and after it was repossessed, in bad condi-

■ In testing the sufficiency of an indictment, the alleged date of the offense is not ordinarily considered a material allegation. 4 Barron, Federal Practice and Procedure § 1913 (Rules ed. 1951).

"Except when time is of the essence of the offense, the prosecution is not confined in its evidence to the precise date laid in the indictment, but may prove that the offense was committed on some other day prior to the commencement of the prosecution and within the period of limitations, and such proof does not constitute a material

---

1. Covington offered no evidence, but withdrew his objection to the testimony of FBI Agent Palumbo, who testified in great detail what Covington had told him about the repossession of the one car and asserted purchase of the second one from GMAC personnel who had repossessed. Counsel for Covington argued to the court and jury that everything related by

Palumbo as having been told him by Covington was true. Counsel referred to Covington's statement as being entirely "exculpatory" except for the admission that Covington had transported the maroon Bonneville from Ohio through New York and into North Carolina during the first week of July 1966.

variance." 42 C.J.S. Indictments and Informations § 257 (1944).

That general rule is also the rule in this circuit. Tincher v. Boles, 364 F.2d 497, 498 (4th Cir. 1966); Land v. United States, 177 F.2d 346, 348 (4th Cir. 1949). *See, e. g.,* United States v. Edwards, 366 F.2d 853, 871–872 (1966).

■ Time is essential,

"as where it constitutes an element of the crime; or where accused having been tried for another and similar offense within the period of limitations, proof of the exact date is necessary to show that he is not being again tried for the same offense; or, where two offenses have been committed, to enable accused to plead the judgment in the present prosecution in the event of a second prosecution; or where the date is necessary to enable the court to impose the proper sentence * * *." 42 C.J.S. Indictments and Informations § 257, at 1279 (1944).

Covington's claim of fatal variance in the court below was limited to the assertion that the time element discrepancy between indictment and evidence was so great as to put him in jeopardy of further indictment and conviction for the same offense. In considering such a question on analogous facts, we held in Tincher v. Boles, that "any prosecution under a subsequent indictment would be foreclosed if the offense charged was one which would have supported a conviction under the earlier indictment." 364 F.2d at 498. The transcript of Covington's trial is available and, should it ever be necessary to do so, it may readily be determined from that transcript whether a newly charged offense was one "which would have supported a conviction under the earlier indictment." Moreover, enough of the facts are narrated here to afford protection, and it

seems unlikely that Federal Second will soon disappear.

■ Covington also contends before us, but did not do so in the court below, that he was prejudiced in his preparation for trial by the variance between the indictment and proof. He urges upon us that he was prepared to prove an alibi for the time period on or about December 27, 1966, but was misled by the indictment and was not prepared to prove an alibi for the period indicated by the proof, *i. e.,* the first week of July 1966. We reject the contention. The proof of transportation of the stolen vehicle during July 1966 came from the defendant himself as related by the FBI agent. It came into evidence without his objection and, indeed, with his strong assertion that it was true. Even now, on appeal, he does not suggest the contrary. Defendant's theory at trial was that he was innocent because of his ownership of the alleged stolen vehicle. He never questioned the element of transportation in July 1966. This is not a case where the time of the alleged offense was disputed at trial. Had that been the situation, a claim of fatal variance prejudicing the preparation of a defense might have been valid.[2]

■ Covington next urges that the government's evidence was insufficient to withstand his motion for acquittal because it did not rise to the level of showing "unexplained possession" upon which the inference of guilty knowledge and interstate transportation with such knowledge could arise. We disagree, and find the evidence adequate to support the ruling and the verdict of guilty.

Before trial, it was stipulated by Covington that the Bonneville in question, found in his constructive possession,[3] was the same car present on the car lot in Shaker Heights, Ohio, from which it was said to have been stolen. It was further

---

2. We have carefully examined the record without discovering the slightest indication by counsel that the defendant was surprised by the government's testimony placing the time of the offense in July 1966 rather than December 1966. It was not suggested to the district judge that the defendant was surprised by the variant testimony, nor was any motion made to the court for a continuance for the purpose of preparing a new defense or for any other reason.

3. Covington abandoned the car in a Greensboro, North Carolina, garage.

stipulated that the license plate on the Pontiac in question was that issued to Covington for the yellow Bonneville which he had earlier owned, and that the transfer to the subsequent Pontiac had not been authorized by the Bureau of Motor Vehicles for the State of Ohio. The evidence taken in the light most favorable to the government tends to show that the car was stolen in Ohio during the month of July, and that during that month it was seen by a witness in Covington's possession in North Carolina. As previously mentioned, Covington's own statement to Palumbo tended to show that he had brought the car to North Carolina in July 1966. Covington had no bill of sale or other documents for the car. The usual registration number had been removed.

 The evidence was sufficient to enable the jury to conclude that Covington's conceded possession of the stolen car was not adequately explained. *See* Cunningham v. United States, 272 F.2d 791, 794–795 (4th Cir. 1959).

 We need not linger over Covington's remaining points, attacking jury instructions. Before the jury retired, Covington's lawyer was afforded the required opportunity to object to the court's charge. No objections were noted. Moreover, before the charge there was a discussion in open court in which counsel assisted the judge in the formulation of instructions. No written request for instructions was made in accordance with Rule 30. Attack on the instructions, in the absence of plain error, which we do not find, is now foreclosed by Fed.R. Crim.P. 30. We observe, however, that the instructions objected to cannot, we think, bear the strained interpretation Covington would have us read into them.

Affirmed.

WINTER, Circuit Judge (concurring specially):

I concur in the opinion and judgment of the Court but I cannot condone the manner in which the United States Attorney conducted this prosecution, a subject which the majority fails to notice.

The indictment was sought and obtained at a time when the government was in possession of defendant's statement that the transportation to North Carolina occurred in July, 1966. Yet the indictment charged the transportation took place on or about December 27, 1966. In argument the United States Attorney explained the government's actions on the ground that the government, at that time, was concerned about the admissibility of the statement under the recently decided case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966). He informed us that, if defendant's statement were inadmissible under *Miranda*, the government's case as to the July, 1966, transportation would fail.

At defendant's trial the government relied almost exclusively on proof of transportation occurring in July, 1966, and defendant timely and vigorously asserted that he was prejudiced by the substantial variance between indictment and proof.

A superseding indictment, before trial, to allege more precisely the proof that the government intended to offer was not barred by limitations. 18 U.S.C.A. § 3282. And reindictment in a two-count indictment, or a second single-count indictment, followed by a motion to consolidate it with the earlier indictment, were also possibilities.

In short, from that which was done and that which was not done in this case, I detect a lack of fairness toward defendant and arguable disregard of his rights. I am unaware of any authority which explicitly approves of such a substantial variance between indictment and proof in such a relatively simple case; but nevertheless, I reluctantly conclude that such a variance is permissible under the authorities the majority cites. Hence, my joinder in the opinion and judgment of the Court. To it I add my admonition that should we receive another appeal of substantially like import, I would vote to exercise our supervisory power to overturn the judgment.