**UNITED STATES of America,**
**Appellee,**

v.

**Harvey WILLIAMS, Appellant.**

**No. 712, Docket 71-2147.**

United States Court of Appeals, Second Circuit.

Argued April 21, 1972.

Decided July 28, 1972.

Francis J. Sheerin, David G. Trager, Asst. U. S. Attys., Robert A. Morse, U. S. Atty., for appellee.

Jesse Berman, Lawrence Stern, New York City, for appellant.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

After a jury trial appellant was convicted on two counts of a three count indictment (the third count was dismissed during trial).[1] In the first count appellant was charged with having, during the approximate dates of March 1, 1969 and October 14, 1969, in Jamaica, West Indies, "wilfully and knowingly encouraged, induced and attempted to encourage and induce one George Dyer to enter the United States and travel to the Eastern District of New York, for the purpose of seeking employment and residing in New York State; whereas the defendant Harvey Williams, knew that George Dyer was an alien not lawfully entitled to enter and reside within the United States."

In count two appellant was charged with having done the same acts on October 16, 1969 within the Eastern District of New York.

Appellant claims his conviction should be overturned because first, the court should have taken the case away from the jury because there was insufficient evidence to convict on either ground, and, second, directed to the first count only, that the court had no jurisdiction to hold appellant criminally liable for acts committed totally outside the United States.

---

1. Defendant was fined $2500 and was sentenced to four years of imprisonment on each of the two counts, sentence to be concurrent. Execution of the sentence was suspended, and defendant was placed on probation for four years, four years' probation to run concurrently.

█ We hold that the evidence, viewed in the light most favorable to the Government, was sufficient. We also hold that conviction upon the first count was proper. Therefore, we affirm the judgment appealed from.

There were but two government witnesses, Dyer and an Immigration Service officer, John Coffey, and there were no witnesses for the defense. The officer, who had not met Dyer until almost a year after Dyer had covertly entered the United States, testified to informative material he uncovered after that meeting, but the government case depended almost exclusively on the testimony of Dyer, an illiterate citizen of Jamaica, West Indies.

Dyer wished to emigrate to the United States, and, in Jamaica, Dyer and Williams agreed that for three hundred Jamaican pounds Williams would "take care of everything." Williams secured a birth certificate, a passport, and airplane tickets for Dyer. They enplaned for New York on October 16 on the same plane but did not sit with each other. Upon arrival at Kennedy Airport in the Eastern District of New York the illiterate Dyer was told that his passport was stamped "New York City, JFK 10/16/69 Carrier to detain alien bearing transit and remove from the United States by 10/16/69," and that he had to forthwith continue traveling to Canada. This he explained to Williams, who, of course, was conveniently at hand. Williams then gave Dyer a piece of paper with an address on it and told Dyer that, after he deplaned, he should hand this paper to a taxi driver who would find the address for him.

In Canada Dyer met a George McMorris who provided him with a border pass which Dyer successfully flashed as he entered the United States by taxicab. McMorris then met Dyer a mile or so inside the United States, discharged the taxi, received $200 in United States currency, and assisted Dyer to buy a bus ticket to New York City. Upon arriving in New York City Dyer was met and taken to a house where he again saw Harvey Williams, and, on the next day, Dyer was delivered into the care of a cousin [2] who lived in New York.

A year transpired before Dyer's illegal entry was brought to the attention of the Immigration Service, and after Coffey's investigation the indictment against Williams was obtained.

At trial the requisite proof to satisfy that Williams was guilty of the offenses charged was proved beyond a reasonable doubt. Williams made all the required Jamaican contacts and obtained the documents the Jamaican citizen needed to leave Jamaica and to arrive at Kennedy Airport and, at Kennedy Airport, gave Dyer the further instruction Dyer needed to get into New York City by following the roundabout and involved route through Canada. Williams was always at hand, in Jamaica, in JFK Airport on October 16, and in New York City when Dyer finally reached there by bus from some unidentified point near the U.S.-Canada border.

█ Finally, the district court had jurisdiction over the acts alleged in Count 1. Defendant actually entered the United States in the Eastern District of New York in furtherance of his commitments made in Jamaica, but, overlooking this important facet of the case, jurisdiction over the first count exists because defendant's actions in Jamaica were designed to have and were proved to have had in fact, an adverse effect upon a governmental function of the United States, that of controlling immigration into this country. See Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911) (Holmes, J.); United States v. Pizzarusso, 388 F.2d 8 (2 Cir. 1968) (Medina, J.); United States v. Aluminum Company of America, 148 F.2d 416 (2 Cir. 1945) (L. Hand, J.).

Affirmed.

---

2. On cross-examination Dyer secured to disclose that his "cousin" Kenneth Dyer was actually his brother.